## OUACHITA POWER COMPANY *v.* DONAGHEY.

### Opinion delivered December 23, 1912.

1. CONSTRUCTION OF STATUTES—MANDAMUS—PERMISSIVE WORDS.— Under section 2, of Act No. 323 of the Acts of the General Assembly of Arkansas of 1905, which provides that when a water power company properly organized and chartered makes application to the State Board of Railway Incorporation for a franchise, the said board *"is authorized"* to grant to such corporation the franchise, the words *"is authorized"* are to be construed as permissive only, and *mandamus* will not be awarded to compel the said board to grant such franchise. (Page 56.)

2. MANDAMUS—PERMISSIVE WORDS—DISCRETION.—Permissive words in a statute impose a duty upon tribunals which will be enforced by mandamus in cases where the public interest or vested private rights

are to be thereby protected or enforced; but when a corporation has acquired no right to operate a public utility and the public has no interest in the granting of a franchise to it; the permissive words of the statute will be given their ordinary meaning, which imply a discretion left with the said board, which the board had a right to exercise. (Page 56.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk*, Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant brings this action to compel by mandamus the State Board of Railroad Incorporation to grant it a franchise to operate a water power on the Ouachita River, in Garland County, Arkansas, making proper allegations in its petition showing that it has duly complied with the provisions of Act 323, of the Acts of 1905, providing for the granting of such franchises, also setting out said act and alleging that the board at a special meeting called for the purpose refused to grant it the franchise upon the sole ground that it had upon another occasion granted a franchise to the Garland Power & Development Company, to erect a dam upon the same river a short distance above the site and the property of the petitioner and fearing that if a franchise should be granted to it that it would interfere or work an injury to the Garland Power & Development Company in the exercise of its franchise. It alleged further that the board was without discretion to refuse to grant the franchise and prayed a mandamus to compel the granting of it in accordance with the petition.

The Board of Railroad Incorporation responded, admitting the incorporation of the petitioner company, for the purpose of erecting a dam site and the generation of power; that it made its application to the Board of Railroad Incorporation, filing a copy of its plat, as required, and that it denied the application for the franchise, for the reason that the board had previously granted a franchise to the Garland Power & Development Company, a company organized under the laws of the State of Arkansas, for the purpose of producing electric current, by water power, for mining, milling, lighting, heat, etc., in the State, upon its petition, a copy of which is attached to the response, and also a copy of its articles of incorporation, with a map, showing the location and principal dam, etc.;

that the Garland Power & Development Company filed application for the franchise, which the said board refused; that said company then filed petition for mandamus in Pulaski Circuit Court to compel said board to grant the franchise, which was refused, and on appeal this court decided said board had power to grant such franchises and should be required to act upon the application; that subsequently the said Garland Power & Development Company was granted a franchise. Appellees say that having previously granted a franchise to the said Garland Power & Development Company that said company acquired the right to use that part of the Ouachita River for its purposes free from interference of other persons or corporations, and that the grant of a franchise to the appellant to occupy the same portion of the river, although below the dam site of the Garland Power & Development Company, would interfere with the use of the river by said company and impair and destroy the value of its franchise and because of the priority of the grant to the Garland Power & Development Company and the absolute physical impracticability of devoting the waters of the Ouachita River and its tributaries at approximately the same point to two different water systems, refused to grant the franchise to appellant and denied its application, as it had the right to do.

Appellant interposed a demurrer to this repsonse, and upon the court overruling its demurrer and denying its mandamus, prayed and was granted an appeal to the Supreme Court.

*Clifton W. Gray* and *B. S. & J. V. Johnson,* for appellant.

Is the language of the act simply permissive or mandatory? Our contention is that it is mandatory and that the board has no discretion. 26 Cyc. 139; 89 S. W. 198; 52 N. Y. 23; 33 Am. Dec. 320; 77 Ill. 271; 38 La. 923; 21 N. Y. Supp. 601; 83 Am. Dec. 557; 40 Md. 312; 50 Me. 256; 39 N. H. 435; 3 McCreary, 333; 4 Wall. 435, 436; Endlich, Const. Stat. 416, § 306; 40 Md. 312; 9 Ore. 253; 30 Ark. 31; 52 Fed. 718; 34 Ark. 390. Under the act of 1905 the duty of the board is merely ministerial. 89 S. W. 198; 76 Mich. 162; 30 Cal. 596; 36 Ala. 371.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

1. The act clothed the board with discretion. 94 Ark.

422; 1 Peters, 46; 22 How. 422; 24 N. E. 1011; Suth. on Const. of Stat., § 462; Endlich on Const. of Stat., § § 306, 312, p. 427; 3 Sandf. Chy. 625, 630; 27 N. J. L. (3 Dutch.) 407, 410; 53 Me. 438; 24 N. E. 1009; 82 Pac. 412.

2. The subject-matter of the act does not call for a mandatory construction. 82 Pac. 412, 417; 3 Johns. Chy. 101; 143 S. W. 107; 73 Pac. 670; Suth. St. Const. p. 597; 39 Mo. 521, 524.

3. Mandamus is not a writ of right, but issues only in the exercise of a sound equitable discretion. 26 Ark. 482; 76 N. W. 482; 53 N. W. 16; 74 N. W. 387.

KIRBY, J., (after stating the facts). No question is made that the application to the board for a franchise did not in all respects comply with the law, and the only question for decision here is whether the law requires the Board of Railroad Incorporation to grant the franchise upon proper application without discretion as to whether it should be done or not.

The act provides, so far as it relates to the question here, as follows:

"Section 1. Any person or any corporation authorized by its charter so to do may erect and maintain on his or its own land a water mill and dam to raise the water to obtain power, or to create a reservoir for storage for equalizing the flow of water for his or its own use, and the uses of the mills below, upon and across any nonnavigable stream, upon the terms and conditions and subject to regulations hereafter expressed.

"Section 2. Any corporation organized under the statutes of this State for incorporation of companies for manufacturing purposes, for the purpose of producing power for manufacturing or reduction plants, for mining, milling, jigging operations, public utilities or other lawful purposes, or who own a general or practicable principal power or dam site, and who have procured a charter for the development and operation of a water power, and who have filed with the Secretary of State and with the counties in which the lands pertaining to such power are situated a plat or survey, showing the location of its principal dam site and the lands necessary for the development of such water power, may erect auxiliary and storage

dams across nonnavigable streams for the purpose of develop-
ing a water   *   *   *   .

"Such power to be for public use and let to parties desiring
it in order of their application.   And the State Board of Rail-
road Commissioners is authorized to grant to such corporations
the franchise of erecting such dam or dams, which franchise
shall state the maximum compensation per horse power to
be received by such corporation for the use of the power
generated."

It will be seen that the act gives to the said board the
authority to act in matters of granting the franchise for the
erection of dams, and in *Garland Power & Development Com-
pany* v. *The Board of Railroad Incorporation,* 94 Ark. 423,
this court held that the Board of Railroad Incorporation and
not the Railroad Commission of the State was intended to
be specified in such act and granted a mandamus against the
board, requiring it to act upon the application therefor.   In
passing upon the question, the court said, "In order to arrive
at the intent of the Legislature as to which of these boards
or commissions it desired to name by this act, it is well to
consider the duties imposed upon and the powers given to
each by statute at the time of the passage of the act.   Nor
is it but reasonable to presume that the Legislature in adding
this duty to the board or commission then in existence ntended
to place it with the board or commission having similar duties
to perform.   At the time of the passage of the act, the princi-
pal duty of the Railroad Commission of Arkansas was to make
reasonable and just rates of freight, etc.,   *   *   *   and it did
not have the power   *   *   *   to grant any franchise to any
corporation.   It was, however, at the time of the passage of
this act the principal duty of the State Board of Railroad
Incorporation to grant charters to railroads and thus to issue
franchises.   The duty imposed by the act of May 13, 1905,
to issue franchises of the character herein applied for was
similar to the duties then performed by the State Board of
Railroad Incorporation.   It is true, that in this act it is also
provided that the maximum compensation or rate per horse
power, shall be fixed, and the duties of the Railroad Commis-
sion of Arkansas relates to the regulation of rates and tariffs.
But we are of the opinion that the issuance of the franchise

was the primary object of this act in designating the board or commission that should perform this duty.  \* \* \*  The writ of mandamus however, will not be granted to review the exercise of any discretion of any officer or board.  It can only be invoked to compel the officer or board to exercise such discretion."  (Citing cases.)

"In this case it is alleged that the board refused to take any action upon the application made to it for the franchise, because the members of the board were of the opinion that they were not the body designated by this act to perform that duty.  We are of the opinion that the Legislature had the right to add to the State Board of Railroad Incorporation the duty to issue the franchise and by this act that board is designated to perform that duty and to exercise within its proper discretion that power."

It has not been questioned that the said board has a discretion in the granting of franchises to railroads, in accordance with the power given by the act establishing it, and the above decision appears to hold also that the board has such discretion in the matter of granting franchises for the development of water power, under the provisions of said Act 323, which will not be controlled by the court, and which was only required to be exercised under the mandamus granted in said cause.

It is true the act says that any corporation, authorized by its charter to do so may erect and maintain on its land a water mill and dam to raise the water to obtain power, etc., and that any company organized under the statutes of this State for the purpose of producing power for manufacturing and reduction plants who own a general or practicable principal power or dam site and who have procured a charter for the operation and development of water power may erect auxiliary storage dams, etc., and, "The State Board of Railroad Commissioners is authorized to grant such corporations the franchise of erecting such dam or dams, which franchise shall state the maximum compensation per horse power to be received by such corporation for the use of the power generated."

It is insisted for appellant that while this language is permissive, that since it is a public service corporation, in the operation of which the public has an interest, that it must

be construed to be mandatory and said board required to grant the franchise without discretion.

Sutherland says: "Permissive words in respect to courts or officers are imperative in those cases in which the public or individuals have a right that the power so conferred be exercised. Such words, when used in a statute, will be construed as mandatory for the purpose of sustaining and enforcing rights, but not for the purpose of creating a right or determining its character." Sutherland Statutory Construction, § 462, p. 597.

Endlich says: "The intent is to be judged of by the purposes of the statute. Where those purposes are to provide for the doing of something for the sake of justice, something which concerns the public rights or interest, or for the doing of which the public has a claim *de jure*; something which concerns and subserves third parties and for the doing of which they have a claim based upon existing rights, and of course, where the thing to be done concerns and subserves rights both of the public and of individuals. In all these cases, an intent is to be inferred that in using a permissive phrase, the Legislature meant to enjoin an imperative duty." Endlich, Interpretation of Statutes, § 312, p. 427.

Sutherland, after discussing the cases, says: "Whether merely permissive, or imperative, depends upon the intention as disclosed by the nature of the act in connection with which the word is employed and the context."

In note to the case of *Thompson* v. *N. Y. & Harlem R. R. Co.*, 3 Sandford's Chy, the editor says: "Statutes are never construed as imposing a duty to exercise the power conferred by them, unless the public interest requires it, or a party before the court is entitled, by virtue of an antecedent right, to have the power exercised for his own benefit," and on page 630, "The true rule of construction applicable to such cases is that the word 'may' means 'must' or 'shall' only in cases where the public interests and rights are concerned, and where the public or third persons have a claim *de jure*, that the power should be exercised."

The ordinary meaning of the language must be presumed to be intended unless it would manifestly defeat the object

of the provision, as said by Justice Story in *Minor* v. *Bank*, 1 Peters 46.

In *Thompson* v. *Carroll*, 22 How. 422, the court, denying to such words a mandatory significance, said: "It is only where it is necessary to give effect to the clear policy and intention of the Legislature, that such a liberty can be taken with the plain words of the statute."

In *Gilmore* v. *City of Utica*, 24 N. E. 1009, the New York Court of Appeals said: "The language is held to be mandatory in such cases, not arbitrarily, but because such is supposed to have been the legislative intention. There must be a definite, plain, public interest, or a vested, well-defined private right, and then it will very justly be supposed that the Legislature meant to subserve the public interest, or to give effect to or secure, the private right."

Our own court, in *Whittington*, Ex parte, 34 Ark. 394, said: "Permissive words in a statute in many cases impose a duty on tribunals which will be enforced by mandamus, but it is always in cases where the public interests, or vested private rights, are to be thereby protected or enforced etc." The power to give the citizen full, adequate and complete relief, or the power to promote the public interest in some prescribed mode, implies the duty to exercise it when the occasion arises. In all other cases the word "may" shall imply discretion and is used in contradistinction to "must" or "shall." The language used, "Is authorized to grant to such corporations, the franchise, etc.," is permissive and its ordinary meaning is to confer authority to be exercised with discretion, and this meaning is presumed to have been intended unless it would manifestly defeat the object and purpose of the provision. The power to grant the franchise is given to a board authorized to exercise discretion in the granting of other franchises, and if it was to have no discretion in this matter, other terms mandatory and imperative would have been employed, or the Legislature could as well in such event and doubtless would have granted the franchise to all business corporations incorporated under the general laws for that purpose upon filing their articles with the Secretary of State.

No right to operate a public utility has been acquired by appellant corporation, nor has the public any interest in

the granting of a franchise to it. The public, it is true, has an interest in the development of power from its water courses and the operation of utilities thereby, but its interests can as well be subserved by the exercise of such franchise and the development of such power by one corporation as another, and the Board of Railroad Incorporation having decided that the grant of a franchise for the operation and development of water power at the place designated by appellant might interfere with and prevent the proper development and operation of such power under the franchise already granted, refused a like grant to appellant.

The purpose of the act will not be defeated by giving the permissive language used its ordinary meaning, which implies a discretion left with the board, to determine when such franchises shall be granted, and it had the right to exercise such discretion. Its discretion can not be controlled by mandamus, which is granted only to protect a clear legal right and to prevent a failure of justice. *Fitch* v. *McDiarmid*, 26 Ark. 482; *State* v. *Anderson*, 76 N. W. 482; Am. & Eng. Ency. of Law, p. 753-b; 25 Cyc. 155; *State* v. *Fagan*, 27 Atl. (N. J.) 1089.

The court did not err in denying the writ and its judgment is affirmed.