MILLER *v.* TATUM.

Opinion delivered January 18, 1926.

1. MANDAMUS—POWER TO ORDER WRIT IN VACATION.—Acts 1925, p. 375, amending § 7020, Crawford & Moses' Dig., § 7020, authorizing the circuit court and the judges thereof in vacation to issue writs of mandamus, meant to authorize the circuit judges to hold court in vacation, but that the court should hear and determine the proceedings and award the writ.

2. COURTS—TIME FOR HOLDING.—It is within the power of the Legislature to prescribe the time and place for holding court, and to authorize the court to be in session at all times for certain purposes.

3. COURTS—VACATION ORDER—RECORD.—Where a cause is heard before a court in vacation, it is the duty of the court to have its final judgment placed on the permanent records of the court.

4. CERTIORARI—REMEDY BY APPEAL.—A judgment that is not void cannot be quashed on certiorari, but, if erroneous, it may be reversed on appeal.

5. APPEAL AND ERROR—APPLICATION FOR CERTIORARI TREATED AS APPEAL.—An application for certiorari to quash a judgment that is not void will be treated as an appeal where the time for appealing has not expired.

6. APPEAL AND ERROR—MATTERS REVIEWABLE.—Where there was no motion for new trial in an action for mandamus, the consideration on appeal will be limited to errors on the face of the record.

7. MANDAMUS—DISCRETIONARY MATTERS.—Mandamus will not lie to control the discretion of an officer in the performance of his duty where such discretion is vested by law, but will only lie to compel an officer to exercise his discretion where he has refused to act at all.

8. MANDAMUS—DISCRETIONARY POWERS OF CITY COMMISSION.—The discretionary powers of a city commission to call an election for the recall of members of such commission can not be controlled by mandamus.

9. EQUITY—CONTROL OVER ACTS OF CITY COMMISSION.—The chancery court has no power, by injunctive process or otherwise, to interfere in a matter involving the recall of city commissioners.

Prohibition to Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; reversed.

*W. L. Curtis* and *Webb Covington,* for appellant.

*Joseph R. Brown, G. L. Grant* and *James B. McDonough,* for appellee.

McCulloch, C. J.  Fort Smith is a city of the first class and has adopted what is known as the commission form of government, authorized by a statute enacted by the General Assembly of 1913.  Acts 1913, p. 48.  The statute provides for three commissioners, composed of the mayor and two other commissioners elected by the people.  M. J. Miller and Thomas H. Ward are the two commissioners elected as such, and J. H. Parker is mayor. The statute provides for the recall of any of the elective officers of the city, an election for that purpose being required to be held on the petition of electors, "at least thirty-five per centum of the entire vote cast for all candidates for that office at the last preceding general municipal election."  Section 17 of the statute regulating the recall reads, in part, as follows:

"The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving street and number, if any.  One of the signers of each of such papers shall make oath before an officer competent to administer oaths that the statements therein made are true as he believes, and that each signature to the paper appended is a genuine signature of the person whose name it purports to be.  Within ten days of the date of filing such petition, the city clerk shall ascertain and determine whether or not said petition is signed by the requisite number of qualified electors, and, if necessary, the board shall allow said city clerk extra help for that purpose; and he shall attach to said petition his certificate showing the result of said examination.  *  *  *  If the petition shall be deemed sufficient, the clerk shall submit the same to the board without delay.  If the board shall find the petition thus submitted to it contains the requisite number of electors signed thereto, and is otherwise found to be sufficient, it shall order and fix a date for holding said election not less than thirty days nor more than forty days from the date of the clerk's certificate to the board that a sufficient petition is filed. * * *"

Section 29 of the statute reads as follows:

"Petitions provided for in this act shall be signed by none but legal voters of the city. Each petition shall contain, in addition to the names of the petitioners, the street and house number in which the petitioner resides, his age and length of residence in the city. It shall also be accompanied by the affidavit of one or more legal voters of the city, stating that signers thereof were, at the time of signing, legal voters of said city, and the number of signatures at the time the affidavit was made."

Petitions for the recall of Commissioners Miller and Ward were circulated, and the same were filed with the city clerk in accordance with the provisions of the statute quoted above, and the clerk, upon examination, determined that the petitions were signed by the requisite number of qualified electors and were sufficient in all respects, and he submitted the same to the board of commissioners for their action. Before the commission acted upon the petitions, a suit was filed in the chancery court by O. E. Jackson and Thomas J. Williams, citizens of Fort Smith, against the commissioners to restrain them from calling an election. The pleadings in that case are not properly before us, but it sufficiently appears that the chancery court, or the chancellor in vacation, granted a temporary injunction in accordance with the prayer of the complaint restraining the commissioners from ordering the recall. Thereupon, the commissioners met in session and voted unanimously that the petitions were insufficient and that the election be not called. Mayor Parker cast his vote to that effect under protest. It is shown that the members of the board of commissioners were advised by the city attorney that they would be in contempt of the chancery court unless they voted against calling the election. A few days later the action instituted by Jackson and Williams in the chancery court was dismissed, and immediately thereafter at a meeting of the board of commissioners Mayor Parker introduced a resolution to call an election pursuant to the petitions,

but the other two commissioners voted to indefinitely post-
pone the resolution, and thus the matter ended there. An
action was then instituted in the circuit court by J. D.
Southard and four other citizens and taxpayers of Fort
Smith against the mayor and the other two commis-
sioners to compel them, by mandamus, to call an elec-
tion pursuant to the petitions. It was alleged in the com-
plaint that the petitions were sufficient, but that Commis-
sioners Miller and Ward had entered into a conspiracy
with certain others to defeat the petitions, that they had
instigated the chancery suit brought by Jackson and
Williams and had been guilty of other fraudulent prac-
tices which afforded just grounds for their recall, and
that the chancery court was without jurisdiction to
restrain the commissioners in taking action upon the
petitions. There was an allegation in the complaint that
"the said M. J. Miller and Thomas H. Ward have done
and are now doing everything in their power to prevent
a recall election being had." The prayer of the com-
plaint was that "the said J. H. Parker, mayor; M. J.
Miller, commissioner No. 1, and Thomas H. Ward, com-
missioner No. 2, composing the board of commissioners
of the city of Fort Smith, be required to hold said peti-
tions sufficient and to call an election as required by law,
to the end that a vote on the recall of said commissioners
may be had." Summons was served on each of the com-
missioners, and the cause was heard by the circuit judge
at chambers during vacation of the court, and findings
of fact and declarations of law were announced and
spread at large upon the records by the trial judge in
his judgment. The judgment rendered was that "the
city commissioners, M. J. Miller and Thomas H. Ward,
are ordered and directed and commanded to call the re-
call election in compliance with the petition, and the
order of the circuit judge, to be held on the 12th day of
January, 1926. The said commissioners are ordered,
directed and commanded to issue the call for said election
on or before the 12th day of December, 1925. In voting

for the recall election, Mayor J. H. Parker and Commissioner M. J. Miller are ordered to vote for the recall of Thomas H. Ward, and J. H. Parker and Commissioner Thomas H. Ward are ordered and directed to vote for the recall of M. J. Miller.''

Miller and Ward presented their joint petition to this court for a writ of certiorari to bring up the record and quash the judgment rendered below on the ground that it is void on its face. This court ordered the issuance of the writ and made an order staying the proceedings below during the pendency of the cause here. The record of the proceedings before the circuit judge has been brought up under the writ, and the cause has been regularly submitted.

The first contention of counsel for petitioners, Miller and Ward, is that the judgment rendered below is void for the reason that the circuit judge has no power to render a final judgment granting a mandamus in vacation. It is, on the other hand, contended by counsel for appellees that the proceedings were had and the judgment rendered, not by the trial judge acting as such, but by the circuit court, which is authorized by statute to hear such proceedings in vacation. A recent statute (Acts 1925, p. 375) amends § 7020, Crawford & Moses' Digest, so as to read as follows: ''The circuit court, and the judges thereof, in vacation, shall have power to issue writs of mandamus to the courts of probate, county courts, justices of the peace and all other inferior officers in their respective circuits.'' It must be confessed that a literal reading of the statute carries the meaning of an attempt to confer jurisdiction upon circuit judges, as such, to hear and determine a cause and to issue the writ of mandamus in vacation, and, if that be the construction placed upon the statute, it is void for the reason that a mandamus, unless issued merely in aid of the court's exercise of acquired jurisdiction, is a final determination of the rights of the parties—is a judicial award —and must emanate from a court and not merely from

the judge. The Constitution vests in the circuit courts, not in the judges thereof, superintending control over inferior courts, and the judges are only authorized in vacation to issue writs in aid of that jurisdiction. Constitution, § 14, art. 7; *Reese* v. *Steel,* 73 Ark. 66. It is our duty, however, to so interpret the language as to give it some effect and carry out the legislative will without thwarting it, if the language is reasonably susceptible of such interpretation. We have concluded, therefore, that under a fair and proper interpretation of the language it was meant to authorize the circuit judge to hold court during vacation, and that the authority to hear and determine the proceedings and to award the writ of mandamus is conferred, not upon the judge, but upon the court. It is undoubtedly within the power of the Legislature to prescribe the time and place for holding courts, and it is not beyond its power to authorize the court to be in session at all times for certain purposes. We have had frequent instances of that kind of legislation in matters of public improvements where delay may be disastrous, and the Legislature has considered it necessary to provide for holding terms of court in vacation; that is, between regular sessions. *Wilmot Road Imp. Dist.* v. *DeYampert,* 159 Ark. 298; *Kirten* v. *Chicot County Drainage Dist.* 161 Ark. 334. It may be argued that this interpretation is not proper because there is no provision for preserving the record of proceedings before the judge in vacation, but the answer to this is, we think, that it is within the power, and will follow as the duty, of the circuit judge where he renders a final judgment, to cause it to be placed on the permanent records of the court. The actions of the clerk of the court are within his control, and it is his duty when he has heard a cause of this kind in vacation to make a permanent memorial of his actions upon the records of the court, and the clerk is the proper official to perform the duty of preserving the record. We conclude, therefore, that the contention of counsel on this point cannot be sustained.

The judgment of the court awarding a mandamus was final, and an appeal therefrom lies to this court. Since the court had jurisdiction to hear and determine the cause, the judgment was not void and cannot be quashed on certiorari, but, if erroneous, may be reversed on appeal. The time for appeal has not yet expired, and it is proper for us to disregard the method by which the cause was brought here and treat the proceedings here as an appeal from the judgment of the lower court. We will so treat the proceedings, and in doing so it becomes necessary for us to determine whether or not the judgment is erroneous. There was no motion for a new trial below, and our further consideration must be confined to an examination of the face of the judgment entry to determine whether or not the judgment was correct or erroneous, and if we find that error appears upon the face of the record, a motion for a new trial or a bill of exceptions is not essential as a prerequisite to a review by this court for error. *Burns* v. *Harrington,* 162 Ark. 162.

The court set forth in its judgment the following findings of facts and declarations of law:

### FINDING OF FACTS.

"1. In the case of M. J. Miller, commissioner No. 1, the entire vote at the last preceding election for commissioner No. 1 was 5,130.

"2. The number of qualified electors that signed the petition for the recall of the said M. J. Miller was 1,844. The number of electors signing the petitions who were not qualified electors, 358.

"3. That the 1,844 qualified electors signing said petitions were more than 35 per cent of the 5,130 electors voting at the last preceding election, April 7, 1925.

"1. In the case of Thomas H. Ward, commissioner No. 2, the entire vote at the last preceding election held April 3, 1923, was 4,273.

"2. That the number of qualified electors signing the petitions for recall of the said Thomas H. Ward

was 1,669; that 369 signing said petitions were not qualified electors.

"3. That the 1,669 qualified electors signing said recall petitions were more than 35 per cent of the qualified electors voting for commissioner No. 2 at the last preceding election.

"4. That none of the petitioners gave their age and length of residence.

"5. That the above facts and findings were made by the city clerk and his helpers, J. S. Northum and R. V. Hudson, and were duly certified to the city commission as required by law.

"6. That a vote was taken by the commission on said recall petitions, an injunction was issued by the chancery court, and the city attorney gave an opinion to the commissioners that they would be in contempt of court unless they voted against the recall. That Mayor J. H. Parker then, under protest, cast his vote against the recall.

"7. That afterwards the plaintiffs in the injunction suit withdrew their suit and freed the city commission from any interference from it.

"8. That Mayor J. H. Parker then introduced a resolution to call the election for the recall of commissioner No. 1, M. J. Miller, and commissioner No. 2, Thomas H. Ward. That M. J. Miller and Thomas H. Ward voted to indefinitely postpone said resolution for recall election, thereby refusing to call the recall election.

"9. That Thomas H. Ward and M. J. Miller in voting against the recall election acted from a personal and selfish motive.

"10. That M. J. Miller acted selfishly and fraudulently in casting said vote."

### DECLARATIONS OF LAW.

"1. It was the duty of the city commission upon the petitions and the certificates of the city clerk to have called an election for the recall of Commissioners M. J. Miller and Thomas H. Ward.

"2. That it is against the elementary and organic law of every civilized country and common justice and decency for a man to sit as judge or arbitrator on his own case.

"3. That it was the duty of M. J. Miller and J. H. Parker to vote on the recall of Thomas H. Ward, and it was the duty of J. H. Parker and Thomas H. Ward to vote on the recall of M. J. Miller.

"4. That the election should be called for January 12, 1926.

"5. That it was not necessary for the petitioners to give their ages and time of residence in the city in signing said recall petitions for the recall of officers."

The statutory definition of "mandamus" is, "an order of a court of competent and original jurisdiction commanding an executive or ministerial officer to perform an act, or omit to do an act, the performance or omission of which is enjoined by law." Crawford & Moses' Digest, § 7021. It is a settled rule of law, recognized by this court in numerous decisions, that mandamus will not lie to control an officer in the performance of a discretionary act nor to control the discretion of an officer in the performance of his duty where such discretion is vested by law, but will only lie to compel an officer to exercise his discretion where he has refused to act at all. *Collins* v. *Hawkins*, 77 Ark. 101; *Nixon* v. *Grace*, 98 Ark. 505; *Jobe* v. *Urquhart*, 102 Ark. 470; *Ouachita Power Co.* v. *Donaghey*, 106 Ark. 48.

Now, it is clear that the trial court exceeded its power in attempting to control the discretion of the commissioners in passing on the petitions for the purpose of determining whether or not an election should be called. The statute, in express words, authorizes the commissioners to examine each petition to determine whether or not it contains the requisite number of electors and is otherwise found to be sufficient, and they are only required to call the election when they find those facts to exist. The commissioners are clothed with authority

to exercise their judgment in making these findings of fact as to the number on the petitions, and it is not within the power of the court to take away that discretion by entering upon an inquiry as to the number of electors who have signed, and then by making a peremptory order on the commissioners to call the election. To so hold would be to vest a power in the court which the lawmakers have seen fit to vest in the board of commissioners. This is an error which appears affirmatively upon the face of the record, regardless of any findings which the court made with respect to the status of the petitions. The statutes only authorize the court to award a mandamus in vacation, and then only for the purpose of compelling an officer to perform a ministerial act.

But it is contended further that, according to the findings of the court, to which only we can look in determining the correctness of the judgment, the commissioners have not acted upon the petition at all, and that it was proper for the court to compel action either by calling the election or refusing to do so. The court found that when the commissioners voted on the recall petition they were under the restraining influence of the chancery court, being so advised by the city attorney, and that their action was not binding on them after the dissolution of the injunction, and that the vote of indefinite postponement of the mayor's resolution to call an election was tantamount to a refusal to consider the petition. The argument is that the commissioners should at least be compelled by mandamus to reconsider the petitions since the chancellor's injunction has been dissolved. We think this contention is wholly unsound. We must accept as correct the finding of the trial court that there was in fact an injunction in force and that the city attorney advised the commissioners that they would be in contempt of the chancery court unless they voted against the recall, but it is plain that the chancery court had no jurisdiction of the subject-matter of that litiga-

tion. It was merely a political matter not involving any property rights or any matters of public taxation, and the chancery court had no power to interfere either by injunctive process or otherwise. *Hester* v. *Bourland,* 80 Ark. 145; *Walls* v. *Brundidge,* 109 Ark. 250. Hence the commissioners, notwithstanding the advice of the city attorney, having submitted to the void injunction as one of the reasons for voting against the recall, must be treated as having acted voluntarily. Moreover, the vote of the commissioners in postponing the resolution to call an election was merely a parliamentary method of refusing or denying the recall and was tantamount to an affirmative vote to that effect. In other words, the commissioners had already voted against the recall, and the vote for indefinite postponement was merely an adherence to that conclusion. Even if there had been compulsion in the original vote, there was none at the time the last vote was taken. The trial court in its finding treated this action of the commissioners as a refusal to call an election. Such was the attitude of the commissioners before the trial court, and that is their attitude now before this court. They state that they have refused, and their effort, both below and here, is to justify that refusal. Nothing could be accomplished therefore by making an order compelling the commissioners to reconsider their former action.

In this view of the case it is unnecessary to discuss other questions presented, for we hold that the order of the court awarding mandamus was erroneous. The judgment will therefore be reversed, and judgment will be entered here dismissing the complaint.

WOOD and HUMPHREYS, JJ., dissent.

HUMPHREYS, J., (dissenting). It is immaterial whether the chancery court had jurisdiction to order the commissioners to vote for or against the recall. The effect of the order was the same. The commissioners were advised by the learned city attorney that, unless they carried out the order of the chancery court, they

would subject themselves to proceedings in contempt. The commissioners then complied with the order, which cannot be regarded as a voluntary act on their part. When the appeal to this court and the proceedings before the chancery court were dismissed, the restraint upon the commissioners was removed, and not until then. Their former action under duress was wiped out by the dismissal of the case in the chancery court. The commissioners were then free to examine the petitions for recall and to act upon them in the fair, impartial manner contemplated by the law, and should have proceeded to do so. Instead, they indefinitely postponed the action upon the petition, without investigation and consideration. The refusal, therefore, of Miller and Ward to investigate the sufficiency and legality of the petitions, after all restraints were removed, upon motion of Parker, was arbitrary, and subject to correction by proceedings in mandamus. For these reasons I dissent from the conclusion reached by my associates.