SPECIAL SCHOOL DISTRICT OF FORT SMITH AND
CHRIS D. CORBIN, SUPT. *v.* MR. RUBY C. LYNCH

5-4158                                          413 S. W. 2d 880

Opinion delivered April 24, 1967

*Daily & Woods,* for appellants.

*Hardin, Barton, Hardin & Jesson;* By: *Robert T. Dawson,* for appellee.

CARLETON HARRIS, Chief Justice. Mrs. Ruby C. Lynch, who had taught in the Fort Smith public school system for twelve years, held a teaching contract with the Fort Smith School Board for the 1964-65 term, the school term commencing September 3, 1964, and continuing for one hundred and eighty-two days. On December 9, 1964, following a series of absences due to illness, Mrs. Lynch, appellee herein, directed a letter to Mr. Chris D. Corbin, Superintendent of Schools, requesting a leave of absence for the balance of the school term; on December 11, Dr. George W. Allen, appellee's physician, directed a letter to the superintendent to the

effect that she was unable to fulfill her contract by reason of illness. On December 31, Mr. Corbin advised by letter, "We will be glad to grant you a leave of absence in terms of the policy listed in our Administrative Policy Handbook." The handbook was a pamphlet published and distributed to the personnel of the school system. The pertinent provisions to this litigation are found in Chapter v, entitled "Absence of Employees." Under Section 1, "Leave of Absence," the following provision is found:

"Granting of a leave by the Board of Directors signifies its intention to re-employ the person upon termination of his leave, with one proviso: there must be a vacancy which, in the judgment of the superintendent of schools, the returing employee is qualified to fill."

Section 6 provides:

"Whether or not the employee wishes to return to the school system he must, thirty days before expiration of his leave, signify to the superintendent of schools, in writing, his intention to return to the employ of the Board of Education or to submit his resignation."

At the same time that Mrs. Lynch requested a leave of absence, she also applied to the Teachers Retirement Board for disability benefits, and was accepted, disability payments commencing the first of the year. Mrs. Lynch received disability checks thereafter, but she only cashed these checks through the month of July, 1965, all checks received subsequent to that date being returned. Sometime in May, appellee orally notified Mr. Corbin that she desired to again teach with the commencement of the fall term.[1]

"Yes, I went to see him in May and told him what my doctor had told me, that if I kept on progressing

---

[1] It is not definite, from the evidence, whether this was late May or early June.

as well as I was then doing, that I would be able to teach in the fall."

There was no further communication between the parties until August 9, when appellee wrote Corbin and requested that her leave be terminated, and that she be returned to her teaching position.[2] Corbin then called her over the telephone, and apparently read to her the provision under Section 1, cited at the outset of this opinion. Mrs. Lynch remembered that he said something about "it was at his discretion as superintendent." The board did not give Mrs. Lynch a contract, and on August 31, 1965, she instituted suit in the Sebastian Chancery Court, seeking a Writ of Mandamus directing the school board and Corbin, appellants herein, to issue to her a 1965-66 teaching contract, and also asking that they be restrained from entering into any other teaching contracts until her contract had been issued. On trial, appellants contended that appellee did not comply with the necessary requirements for reinstatement as an active teacher, as set forth in the provisions under which she was granted a leave of absence nor did she follow the designated procedure for removing herself from the disability retirement rolls to regain her status as physically qualified to teach.

The court found that appellee was entitled to her contract under the provisions of Ark. Stat. Ann. § 80 1304(b) (Supp. 1965), and held that she was entitled "to recover of and from the defendant compensation at the then prevailing contractual rate for teachers of her experience minus any and all amounts paid to the plaintiff by the State Teachers Retirement Board from Oc-

---

[2]Mrs. Lynch testified that Corbin told her at the time of her visit in May that she would have to have a doctor's certificate, but that he would have Dr. Bost, a member of the school board, contact her doctor (Dr. Allen) as a matter of determining Allen's views relative to her health. Corbin testified that this was done, but that Bost subsequently indicated that he did not think Mrs. Lynch was ready to go back to teaching.

tober 1, 1965, to September 1, 1966.''³ From the decree so entered, appellants bring this appeal.

For reversal, appellant relies upon four points, but these are interrelated, and we do not deem it necessary to discuss each one separately.

Actually, the question is whether, in changing her status from an active teacher to that of an inactive one on leave and drawing disability, did Mrs. Lynch still retain the identical rights of a teacher who completed her contract, or was it first necessary that she follow established procedures to become reinstated to active standing?

Mrs. Lynch testified that she was given leave until the end of the school year (the evidence reflected that the school year ended June 4, 1965). Admittedly, she never gave any written notice to either Mr. Corbin or the school board until August 9 that she would be physically able, and ready, to teach when the fall term commenced.⁴ She did orally notify Mr. Corbin some time in May or early June, but, according to her testimony, heretofore quoted, she advised Mr. Corbin that her doctor said, ''If I kept on progressing as well as I was then doing, that I would be able to teach in the fall.'' It is at once obvious that, even though the oral notice had been given thirty days before the end of the term, and even if the oral notice be considered as substantial compliance with the notice provision, such notice would still be defective, for it is indefinite and conditional, dependent entirely on whether her health continued to

³We do not discuss the question of the jurisdiction of the Chancery Court to issue Writs of Mandamus, since the Chancellor ignored this prayer in the complaint, and based the relief granted on the theory that appellants had breached the contract with appellee.

⁴Her written notice of August 9 was accompanied by a statement from Dr. Allen. Even then, his statement is not absolute: "It is my professional opinion that she *will be able* [Emphasis supplied] to resume teaching school in the fall semester of 1965."

improve. Accordingly, if Mrs. Lynch was bound by the provisions found in Chapter 5 of the Administrative Policy Handbook, heretofore quoted, she cannot prevail in this litigation, for those provisions were not complied with.

The Chancellor held that the only question was whether the specific language of Ark. Stat. 80-1304 could be amended by the terms of the Teachers Retirement Law, or by the Administrative Policy Handbook, which had been adopted by the local school board, and he held that the section referred to was controlling. The pertinent part of that section is as follows:

"Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the school year next succeeding the date of termination fixed therein, which renewal may be made by indorsement on the existing contract instrument; unless during the period of such contract or within ten (10) days after the termination of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year, or unless the teacher during the period of the contract or within ten (10) days after close of school shall deliver or mail by registered mail to such board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties."

It is admitted that the board did not send Mrs. Lynch a ten-day written notice that her teaching contract would not be renewed. The Chancellor apparently gave no consideration to the last quoted phrase, *"unless such contract is superseded by another contract between the parties* [Emphasis supplied.]" We think the court erred in reaching its determination, and this is true

whether the provisions (listed in the Administrative Policy Handbook) under which Mrs. Lynch was granted leave are held to be a new contract, or whether such provisions are considered a part of appellee's 1964-65 teaching contract, entered into between the board and Mrs. Lynch on May 18, 1964. It may be that the italicized phrase primarily has reference to a new teaching contract (for the ensuing year), but, unquestionably, the parties here did enter into a new agreement, whatever it may be called. The Chancellor adopted the theory, here argued by appellee, that Mrs. Lynch never lost her standing as a regular teacher, but, under any theory, it is evident that her status as a teacher had changed, for she was not teaching at the end of the school year, and regular teachers with contracts do teach until the school year has ended. We think the provisions of the statute, relied on by the Chancellor, can only have reference to those teachers who have fulfilled their contracts, and who are thus eligible to be "carried over" to another school year. Mrs. Lynch, of course, did not comply with her contract, though such non-compliance was through no fault of her own.

However, even if we should consider that the taking of leave was not accomplished under a new contract, it would still appear that she violated the terms of her own teaching contract. This contract, *inter alia,* states:

"* * * that the teacher will conform to all the requirements, rules and regulations that the board has adopted or may hereafter adopt."

The provisions under Chapter 5 at issue in this litigation are included in the official publication of the board of directors of the Special School District of Fort Smith, and were expressly included as a part of appellee's teaching contract. So—Mrs. Lynch did not comply with the requirement of notifying the superintendent of her intention to return to active status, whether that requirement be considered as necessitated under a new

agreement (under which she was granted leave)—or under her teaching contract.

The doctrine of equitable estoppel also precludes Mrs. Lynch from recovery against the school board. In *Williams Manufacturing Company* v. *Strasberg,* 229 Ark. 321, 314 S. W. 2d 500, we said:

"* * * One cannot 'have his cake and eat it too.' He cannot accept benefits under a contract, and at the same time, avoid his obligations under such agreement. Appellee received a substantial benefit from the shipment of fall shoes, and having accepted that benefit, he cannot refuse to compensate the company because of their alleged breach."

Here, Mrs. Lynch received and accepted a valuable benefit from the school board, one incidentally that the board was not statutorily required to give. Having accepted the leave benefits as provided in the Administrative Policy Handbook, she cannot now be heard to say that the requirements for a return to active status are meaningless and without force or validity.

It might also be mentioned that there was no guarantee of reemployment, even if Mrs. Lynch had complied with all prerequisites, for the agreement permitting leave clearly states that reemployment is subject to a vacancy, "which, in the judgment of the Superintendent of Schools, the returning employee is qualified to fill."

Since, admittedly, the written notice signifying her intention to return was not given, and finding no evidence that would operate as a waiver of the requirement of written notice, it actually becomes unnecessary to discuss the question of appellee's failure to comply with the requirements of the Teacher Retirement System for removal from the disability retirement roll. Of course, a school board would not knowingly employ a teacher who might not be physically able to carry out the duties of the position, and the testimony reflects that, commenc-

ing with the 1961-62 school year, Mrs. Lynch had been absent quite a bit.[5] Appellee strongly argues that the requirements of the rule relative to removal from the disability roll were waived by the conduct of the parties, but, as stated, because the failure of appellee to give the notice, heretofore considered, is fatal to her cause of action, further discussion could only be in the nature of *dictum*.

Reversed.

Brown and Fogleman, JJ., concur.

John A. Fogleman, Justice, concurring. I concur in the result, but I would reverse and dismiss for want of jurisdiction. The chancery court is totally devoid of jurisdiction to issue a writ of mandamus, which appellee admitted was the only remedy sought. I am not unmindful of Ark. Stat. Ann. § 33-101 (Repl. 1962) which is § 1 of Act 54 of 1939, but it is patently unconstitutional. It violates Article 7, §§ 11 and 15. The former provides that the circuit court shall have exclusive jurisdiction of all civil and criminal cases, the exclusive jurisdiction of which may not be vested in some other court provided for by the Constitution. A more apt example of a legislative attempt to extend or enlarge the jurisdiction of courts of equity could not be found.

That the writ of mandamus is a common-law writ and within the jurisdiction of the circuit court only should be without argument, being a remedy at law. 34

---

[5]According to the evidence, she only taught 39½ days in the 1964-65 school term, was absent 30 days during the 1963-64 school year, 23 days during the 1962-63 school year, and 22 days during the 1961-62 school year.

[6]According to Hoyt R. Pyle, Executive Director of the Teacher Retirement System, a person desiring to be removed from the disability payroll must first request consideration of her case by the retirement system's medical board, and must present a properly executed medical report from her doctor, which states that she has fully recovered, and is physically able to return to teaching. The board would then be in a position to act on the request.

Am. Jur. 810, Mandamus, § 4. It is a common-law writ as distinguished from an equitable one and was unknown to the equity practice. 34 Am. Jur. 812, Mandamus, § 6; 55 C. J. S. 47, Mandamus, § 17b. In sustaining the jurisdiction of a circuit court, this court said that mandamus is essentially a proceeding at law. *Faulkner Lake Drainage Dist.* v. *Williams*, 169 Ark. 592, 276 S. W. 604. It is designed for the enforcement of *legal* rights. *Arkansas State Highway Commission* v. *Otis & Company*, 182 Ark. 242, 31 S. W. 2d 427; *Bingham* v. *McGehee*, 185 Ark. 707, 49 S. W. 2d 358; *Barney* v. *City of Texarkana*, 185 Ark. 1123, 51 S. W. 2d 509.

The legislature is without authority to give the chancery courts any jurisdiction they could not exercise at the time of the adoption of the Constitution of 1874. It can vest chancery courts only with jurisdiction in matters of equity. *German Nat'l Bank* v. *Moore*, 116 Ark. 490, 173 S. W. 401; *Wilson* v. *Lucas*, 185 Ark. 183, 47 S. W. 2d 8; *Patterson* v. *McKay*, 199 Ark. 140, 134 S. W. 2d 543. Their jurisdiction is fixed and permanent, and cannot be enlarged or abridged. Any law passed for the purpose of divesting, enlarging, diminishing, abridging or changing it is unconstitutional. *Hester* v. *Bourland*, 80 Ark. 145, 95 S. W. 992; *Gladish* v. *Lovewell*, 95 Ark. 618, 130 S. W. 579. In *Patterson* v. *McKay*, *supra*, this court said it did not offer a more extended discussion of this matter for the reason that it thought the principle must be universally recognized.

This court has held other legislative acts unconstitutional for this reason. Among them are:

An act providing for contest of primary elections in the chancery court was held unconstitutional. *Hester* v. *Bourland*, 80 Ark. 145, 95 S. W. 992.

An act purporting to give the chancery court jurisdiction to oust an incumbent officeholder for corruption in office. *Gladish* v. *Lovewell*, 95 Ark. 618, 130 S. W. 579.

In matters of which it has no jurisdiction, the judgments of a chancery court are void. *Raney* v. *Hinkle*, 80 Ark. 617, 95 S. W. 993; *Miller* v. *Tatum*, 170 Ark. 152, 279 S. W. 1002. The disregard of such void judgments would not constitute contempt. *Miller* v. *Tatum, supra*. They would not be res judicata in any future action. *Weathers* v. *City of Springdale*, 239 Ark. 535, 390 S. W. 2d 125. A fundamental want of judicial power cannot be supplied by acquiescence of the parties. *Sheffield* v. *Heslep*, 206 Ark. 605, 177 S. W. 2d 412; *O'Dell* v. *Newton*, 224 Ark. 541, 275 S. W. 2d 453; *Catlett* v. *The Republican Party of Arkansas*, 242 Ark. 283, 413 S. W. 2d 657. The lack of jurisdiction of the subject matter cannot be waived by any act of the parties. *Sugar Grove School Dist. No.* 19 v. *Booneville Special School Dist. No.* 65, 208 Ark. 722, 187 S. W. 2d 339. Consent of the parties cannot possibly confer jurisdiction of the subject matter. *Jernigan* v. *Baker*, 221 Ark. 54, 251 S. W. 2d 999; *Weathers* v. *City of Springdale, supra*.

Whether the question is raised by the parties or not, it is not only the power but the duty of a court to determine whether it has jurisdiction of the subject matter. 20 Am. Jur. 2d 453, Courts, § 92; 21 C. J. S. 175, Courts, § 114.

I would dismiss, rather than remand with directions to transfer to a court of law, because I think appellee has sought to have the court control the discretion of the Superintendent of Schools and the Directors of the School District. The appellee had no right to a leave of absence under her contract, nor do there appear to be any statutory provisions governing the same. Provision for such leaves, then, becomes a discretionary matter with the school board. They exercised this discretion by providing administrative policies in connection therewith. While these regulations provide for re-employment of a teacher granted leave thereunder, after proper notice by the teacher, there is the proviso that there must be *a vacancy which, in the judgment of the superintendent of schools,* the returning employee is *qualified* to fill.

Certainly the physical ability of appellee to perform was an element to be considered by the superintendent and I feel that the evidence is clear that by the time this was established (assuming that it was established) the superintendent did not feel, in his judgment, that appellee was qualified to fill any vacancy then existing.

It is elementary that mandamus will not lie to compel performance of an act that is discretionary. *Smith* v. *Sullivan,* 190 Ark. 859, 81 S. W. 2d 922; *Jackson* v. *Collins,* 193 Ark. 737, 102 S. W. 2d 548; *Hardin* v. *Cassinelli,* 204 Ark. 1016, 166 S. W. 2d 258; *State ex rel Pilkinton* v. *Bush,* 211 Ark. 28, 198 S. W. 2d 1004;.*Village Creek Drainage Dist. of Lawrence Co.* v. *Ivie,* 168 Ark. 523, 271 S. W. 4. It will only lie to compel performance of a purely ministerial act or to require, but not control, the exercise of discretion. *Arkansas State Highway Comm.* v. *Mabry,* 229 Ark. 261, 315 S. W. 2d 900; *Dotson* v. *Ritchie,* 211 Ark. 789, 149 S. W. 2d 603; *Satterfield* v. *Fewell,* 202 Ark. 67, 202 S. W. 2d 949. It cannot be used to correct an erroneous decision already made by an officer or tribunal. *Jackson* v. *Collins,* 193 Ark. 737, 102 S. W. 2d 548; *Mance* v. *Mundt,* 199 Ark. 729, 135 S. W. 2d 848; *Mobley* v. *Conway County Court,* 236 Ark. 163, 365 S. W. 2d 122; *Dotson* v. *Ritchie, supra*; *State ex rel Latta* v. *City of Marianna,* 183 Ark. 927, 39 S. W. 2d 301. It will not be granted to review the exercise of discretion by an officer or board. *Better Way Life Ins. Co.* v. *Graves,* 210 Ark. 13, 194 S. W. 2d 10.

I also think that mandamus would not lie because it is essential to the issuance of the writ that the legal right of the petitioner to the performance of the act be clear, undoubted and unequivocal, so as not to admit of any reasonable controversy. *Naylor* v. *Goza,* 232 Ark. 515, 338 S. W. 2d 923. The petitioner failed to make such a showing as to invoke this writ, regardless of whether she was entitled to other relief or not.

I am authorized to state that Brown, J., joins in this concurring opinion.