JERNIGAN *v.* BAKER.

4-9863                                                              251 S. W. 2d 999

Opinion delivered October 27, 1952.

*S. L. White,* for appellant.

*W. Tillar Adamson,* for appellee.

GRIFFIN SMITH, Chief Justice.    Mixed questions of law and fact are presented, but the appeal requires us to determine (a) whether the edges or lower border of the roof of a building constructed on appellees' property and projecting portions of a concrete foundation, violate terms of the bill of assurance common to each proprietor; (b) whether the unauthorized use of appellants' driveway by those employed by appellees to do construction work damaged the driveway and if so to what extent; (c) were the truck drivers whose activities were alleged to have occasioned the damage employees under control of an independent contractor to whom appellants should look, rather than to the lot-owners.    For brevity the parties will be identified as Jernigan and Baker.

Jernigan owns Lot G, Kingwood Place.    Baker is the owner of adjoining Lot F.    All of the land in Kingwood insofar as this litigation shows was formerly owned by Pulaski Investment Company, a corporation.    The deeds to various parcels are tied to a bill of assurance which provides that no house shall be erected on any lot "nearer than seven and a half feet to the inside line of the building lot or plot" selected for such construction.    Outbuildings, garages, and servant quarters are included in the restrictions.

The admittedly unusually wide eaves of which complaint is made extended to within less than four feet of the property line.    Baker testified that according to a survey to which he referred the distance from the brick-walled side of his house to the property line varied from 7.65 feet at the rear to 7.55 feet at the front.

It is Jernigan's contention that the objectionable eaves extended to within three and seven-tenths feet of

the property line, thus obstructing the view in circumstances where the bill of assurance contemplated that the clear space between buildings on adjoining lots should be fifteen feet—seven and a half feet on each side. Baker admits the physical facts with perhaps slight variations in measurements, but thinks it unreasonable to attribute to those who planned Kingwood Place and authors of the bill of assurance an intent to extend the restrictions to incidental projections. This reasoning would restrict violations to solid walls and the like.

A second contention is that the trial court was without jurisdiction because, assuming there had been an encroachment, an adequate remedy at law by way of damages was available.

The difficulty with this defense is that the bill of assurance contains express language relating to any "attempt" to violate the covenants and restrictions. By paragraph 10 any person owning lots in the addition is given the right to prosecute proceedings at law or in equity against any person violating or attempting to violate the covenants, "and to either prevent or recover damages for such violation."

We have frequently held that jurisdiction of the subject-matter cannot be conferred by consent. *Strahan* v. *The Atlanta National Bank of Atlanta, Texas,* 206 Ark. 522, 176 S. W. 2d 236.

Facts in the case before us show that the building was not completed until around November 1, 1951. On July 16th Jernigan, through his attorney, wrote Baker and complained that his driveway was often blocked by trucks and that it was being damaged. He also complained of the projecting eaves. It is in evidence that prior to this time Jernigan had complained to Glen Henry, the contractor. Henry's version of these conversations was that Jernigan consented to "go along" without interfering with such usage provided the driveway would be restored to its original condition. While the work was in progress cars were frequently parked in such a way that Jernigan could not use the driveway. It was admitted, however,

that some of these were in charge of persons who were inspecting the new building—and, inferentially, Baker was not responsible for this class of interference.

When the scope of the transactions is considered we think the Chancellor correctly declined to dismiss for want of jurisdiction. An amended complaint alleged that Jernigan had sustained damages to the extent of $1,000 by reason of the encroachment, that he would continue to suffer damages if the obstruction were not removed, and that monetary relief would be inadequate.

While Baker and his contractor could have been mistaken in assuming that projecting eaves (extending more than three feet beyond the deadline) were not within the prohibitory language of the bill of assurance, the test is not what they honestly believed. The controlling considerations are, first, What was the purpose in inserting the restrictions? and, secondly, was the language sufficient to convey to reasonable minds the purposes Jernigan contends were intended? Each question must be answered in the affirmative. In *Leffingwell* v. *Glendenning*, 218 Ark. 767, 238 S. W. 2d 942, it was held that the owner of a lot whose contractor inadvertently built a retaining wall separating adjacent property was under legal compulsion to remove a protrusion varying from a fraction of an inch to nearly four inches over a distance of 26 feet.

In the case at bar Baker built on his own land, and to this extent the transaction differs from the Leffingwell controversy. But, though he built on his own land, he violated rights of others who bought lots in reliance upon the bill of assurance. Quite clearly the primary purpose was to guarantee that an unobstructed area of fifteen feet would separate buildings in all cases where the assurance applied. No one could seriously argue that eaves are not a part of the attached building, and in the instant case a projection of more than three and a half feet constituted an invasion of the area Jernigan had every cause to believe would always remain unobstructed. It follows that a mandatory injunction requiring removal should have been given.

58

The evidence is conflicting as to what damage Jernigan sustained through use of his driveway. The original demand was $500, but this was reduced by the Chancellor to $50. Henry testified that complaint was made by Jernigan and that he promised to restore the property to its original state. While Henry thought the damage was insignificant, Baker testified that "probably" the use of a bulldozer for half a day would be required at a cost of "approximately" $25, and that about three loads of crushed rock at $18 per load would be required. His estimate as a whole was "less than a hundred dollars." This did not, of course, allow for inconvenience. It is our view that any award under $100 would be inadequate, and to that extent, and in the failure to require removal of the eaves, the decree is reversed.

To whatever extent the foundation projection creates a visible obstruction, its removal would be in order. However, the slight projection appears to have been ground covered, so no order affecting it will be made at this time. If, on petition for rehearing, the right is insisted upon, further consideration will be given.