2018 Ark. 38

**VERA LEE ANGEL REVOCABLE TRUST, Johnny Angel, and Paula Napper, Appellants**

v.

**JIM O'BRYANT AND KAY O'BRYANT JOINT REVOCABLE TRUST, John W. Whittaker, Susan C. Whittaker, John Stansel Harvey, Lisa Harvey, Ernest Bernard McCool Trust, Gregory D. Hawkins, Sharon L. Hawkins, Jimmie Earl O'Bryant, Barbara O'Bryant, Glen Dale Perciful, Teresa M. Perciful, Robert Louis Gladfelter Revocable Trust, and Jeanne M. McFarlin Living Trust, Appellees**

No. CV–16–1041

Supreme Court of Arkansas.

Opinion Delivered February 8, 2018

None of the lots shall be improved, used or occupied for other than residence purposes and specifically none of the lots shall be used for any commercial purpose, including motels, tourist courts, motor hotels, hotels, garage apartments, apartments, etc. and no commercial boat landings, docks or facilities of any kind for commercial and fishing boats for hire, shall be erected on or attached to said lots and no stores shall be erected thereon.

In 2006, a restriction on condominiums was added.

Initially the house was the home of John Angel's and Paula Napper's mother and father. Later, it was placed in a trust. For a time, John Angel and his wife also lived in the house, but thereafter, the house was vacant. According to Angel, he subsequently allowed friends and neighbors to "use" the house on a "short-term basis," but he denied offering the house for rent before 2015.

Angel decided to list the property on VRBO.COM. VRBO is the acronym for "Vacation Rentals By Owner." VRBO.COM connects private individuals with vacationers seeking short-term rentals of properties located in resort areas. Appellees attached to their complaint a copy of Angel's VRBO.COM posting, which stated that the rental rate for the property was $329 per night, with a two-night-minimum stay required.

Legacy Law Group, by: Philip B. Montgomery, for appellant.

D. Scott Hickam, for appellees.

JOSEPHINE LINKER HART, Justice

The Vera Lee Angel Revocable Trust, through trustees Johnny Angel and Paula Napper (Angel) appeal from an order of the Garland County Circuit Court permanently enjoining them from using for short-term rentals a house situated on a lot in the Jeffries and Norvell Subdivision. On appeal, Angel argues that the circuit court's rulings were clearly erroneous. We reverse and dismiss.

The facts in this case are not in dispute. The house in question is a fully furnished 5000-square-foot structure that sits on a 6.07-acre lot located in the Jeffries and Norvell Subdivision in Garland County. The 26-acre subdivision, which is adjacent to Lake Hamilton, was platted in 1953. In pertinent part, the subdivision's bill of assurance states:

On March 23, 2016, appellees, who are the other landowners in the Jeffries and Norvell Subdivision, filed a complaint seeking to enjoin Angel from "offering the premises to those who do not reside there, from carrying on a commercial business, from engaging in short-term rentals, and from similar activities that constitute a

nuisance[1] to the Plaintiffs." Angel answered the appellees' complaint and counterclaimed for declaratory judgment, asking the circuit court to find that "there were no restriction[s] on rentals and that short-term rentals are not prohibited by the covenants contained within the Bill of Assurance."

After a hearing in which several of the property owners in the subdivision[2] testified, primarily on the issue of whether short-term rentals affected the enjoyment of their property, the circuit court granted a preliminary injunction. The circuit court reasoned that *Dunn v. Aamodt*, 695 F.3d 797 (8th Cir. 2012) is "controlling;"[3] the bill of assurance for the subdivision in which the house is located is not ambiguous; using the property for short-term rentals violated the covenants found in the bill of assurance; and continued violation of the bill of assurance will cause the other residents of the subdivision irreparable harm. Angel filed a notice of appeal. However, by joint motion, the parties asked the circuit court to make the injunction permanent. The circuit court granted this request, finding that the bill of assurance was not ambiguous; Angel's use of the property "for overnight and weekly rentals is in violation of the Jeffries and Norvell Subdivision Bill of Assurance"; and the property had been used for "other than residential purposes and has been used for a commercial purpose." The circuit court ordered that Angel "refrain from renting the subject property." The circuit court also dismissed Angel's counterclaim. Angel again timely filed a notice of appeal.

On appeal, Angel argues that the circuit court clearly erred for several reasons. First, he contends that the circuit court's construction of the bill of assurance was erroneous because it did not strictly construe the instrument in favor of unfettered use of the land. Angel asserts that the restrictions in the bill of assurance are not

---

1. In construing the complaint, we determined that appellees' assertion in the prayer for relief that the short-term rentals constituted a "nuisance" was not meant as an alternative theory for granting an injunction. Rather, it was directed at whether appellees were irreparably harmed by the breach of the covenants contained in the bill of assurance. It appears that appellees have used the word "nuisance" in its colloquial sense, rather than as a term of art. In the law, "nuisance" is defined as "conduct by one landowner that unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property that disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property. *Aviation Cadet Museum, Inc. v. Hammer*, 373 Ark. 202, 283 S.W.3d 198 (2008). While it is true that actions in equity are the primary legal mechanism for abating a nuisance, in the case before us, appellees have not separately pleaded this cause of action. We note further that the circuit court made no findings regarding whether short-term rentals constituted a "nuisance." Accordingly, we have before us a final order and thus have appellate jurisdiction.

2. John Stansel Harvey, Robert Louis Gladfelter, trustee of the Gladfelter Trust, Jim Earl O'Bryant, and Glen Perciful

3. The circuit court was incorrect when it found that *Dunn* was "controlling," which we interpret to mean "mandatory authority" in this case. *See Waller v. Banks*, 2013 Ark. 399, 2013 WL 5603930. While we have found some aspects of *Dunn* to be helpful in our analysis, it by no means disposes of the issues before us. In *Dunn*, the Eighth Circuit affirmed a federal district court's denial of a petition by landowners in a subdivision that sought to prevent a fellow landowner from renting his dwelling as a vacation home. The plaintiffs alleged that the rental activity violated a restrictive covenant that stated, "Sites must be used for residential purposes only except Lots # 1, # 2, and # 4, which are designated as commercial or residential." *Id.* The federal court, while applying Arkansas law, which requires that restriction on land be "clearly apparent," declined to prohibit the rentals because it found ambiguity in the restriction.

"clearly apparent." In this vein, he first challenges the finding that his use of the property was "commercial."

Angel argues that the language in the bill of assurance makes "no reference whatsoever to rentals." While he acknowledges that the plain language proscribes "commercial structures such as motels, hotels and tourist courts," he notes that one of the appellees "admitted" that the house "did not appear to be a hotel in the traditional sense." Furthermore, he asserts that while it was "obvious" that the developer intended to restrict commercial venues such as motels and hotels, stores, and marinas, the actual use of the property or the length of time one can rent the property is not restricted.

Angel urges us to find persuasive a number of cases from foreign jurisdictions where short-term rentals have been held to not violate a restrictive covenant. Quoting at length from an Alabama Court of Civil Appeals case, *Slaby v. Mountain River Estates Residential Ass'n, Inc.*, 100 So.3d 569 (Ala. Civ. App. 2012), Angel asserts that *Slaby* illuminates the "inherent problem" with the circuit court's construction of the bill of assurance in the case before us. He argues that, like the covenants in *Slaby*, the bill of assurance does not address "rentals in any form, short or long-term." Consequently, Angel argues that the circuit court's restriction on nightly and weekly rentals seems "arbitrary" because there is nothing in the bill of assurance to indicate when the length of a rental converts the use of the property from residential to commercial. Further, citing *Lowden v. Bosley*, 395 Md. 58, 909 A.2d 261 (Md. Ct. App. 2006), he urges this court to disregard the fact that he derived income for short-term rentals because, as the Maryland Court of Appeals noted in *Lowden*, "there is no inherent inconsistency between a residential use by a tenant and a commercial benefit for the landlord." Finally, Angel argues that the circuit court order is "simply too expansive" because there was no testimony regarding weekly rentals, and the bill of assurance contained no specific restriction on "weekly rentals."

We note first our standard of review. Because the issuance of a permanent injunction sounds in equity, our review is de novo. *See generally Ark. State Game & Fish Comm'n v. Sledge*, 344 Ark. 505, 42 S.W.3d 427 (2001). We review the circuit court's factual findings leading to the issuance of the injunction under the clearly-erroneous standard. *See S. Coll. of Naturopathy v. Beebe*, 360 Ark. 543, 203 S.W.3d 111 (2005). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, upon viewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *See Ligon v. Stewart*, 369 Ark. 380, 255 S.W.3d 435 (2007).

Arkansas law does not favor restrictions on land. *Royal Oaks Vista, L.L.C. v. Maddox*, 372 Ark. 119, 271 S.W.3d 479 (2008). Accordingly, courts must strictly construe restrictive covenants against limitations on the free use of land. *Id.* Any restriction on the use of land must be clearly apparent in the language of a restrictive covenant. *Id.* However, when the language of the restrictive covenant is clear and unambiguous, application of the restriction will be governed by our general rules of interpretation: the intent of the parties governs in accordance with the plain language of the restriction. *Id.* Furthermore, our rules of construction should not be applied in such a way as to defeat the plain and obvious purpose of the restriction. *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996).

Accordingly, in our de novo review of the case before us, it is our task to strictly construe the pertinent part of the bill of assurance for the Jeffries and Norvell Subdivision, which we have quoted earlier in this opinion. The basic doctrine of strict construction means taking the plain meaning of the language employed. *Id.* Here, the bill of assurance forbids use of the property for "other than residence purposes" and "any commercial purpose, including motels, tourist courts, motor-hotels, hotels, garage apartments, apartments, etc."

"Residence" is defined in *Black's Law Dictionary* in pertinent part as "[t]he place where one actually lives as distinguished from domicile." *Black's Law Dictionary* 1502 (10th ed. 1995). In the case before us, there is absolutely no evidence, or even a suggestion, that renting the property in any way changed the essential character of the house as a "residence." Whether owner-occupied or rented for a weekend, the house remained a "residence."

A closer question is whether short-term rentals violate the restriction on "any commercial purpose." "Commercial" is defined in *Black's Law Dictionary* in pertinent part as "resulting or accruing from commerce or exchange . . . employed in trade; engaged in commerce . . . of, relating to, or involving the ability of a product or business to make a profit." *Id.* at 325. Further, the bill of assurance cited specific examples of the types of "commercial purposes" that were contemplated by the restriction—"including motels, tourist courts, motor-hotels, hotels, garage apartments, apartments, etc." Each of these examples connotes ventures that have an outward appearance and character of operation that is readily distinguishable from a single-family dwelling.

We have carefully considered all of the authority from the foreign jurisdictions that Angel has cited. While none of the cases construed restrictive covenants that were identical to those found in the Jeffries and Norvell Subdivision bill of assurance, some of the reasoning in these cases is persuasive. The covenants construed in *Dunn, Scott v. Walker*, 274 Va. 209, 645 S.E.2d 278 (2007), and *Lowden, supra*, contained no restriction against using the respective subdivision properties for a "commercial purpose." However, in each of these cases, the courts determined that short-term rentals did not offend restrictions that limited the use of the property for residential purposes.

Regarding the restriction on "commercial" purposes, the discussion in *Slaby, supra*, is particularly helpful. The *Slaby* court was tasked with construing covenants for the lots in the Mountain River Estates subdivision in DeKalb County, which state, in pertinent part, "The subject property is restricted to single family residential purposes only. No commercial, agricultural or industrial use shall be permitted." The *Slaby* court acknowledged that the Slabys received rental income from the property but held that receiving rental income did not "transform the character" of the surrounding subdivision. *Id.* In essence, the *Slaby* court recognized that the dwelling in the subdivision was still being used for residential purposes regardless of whether the persons dwelling there were renters or owners.

While we are mindful that the bill of assurance for the Jeffries and Norvell Subdivision prohibits using the property for any "commercial purpose," it is silent with regard to rental of the property. Certainly, if the drafters of the bill of assurance intended to prohibit renting of property in the subdivision, they could have done so with an express provision. As noted previ-

ously, under Arkansas law, any restriction on the use of land must be clearly apparent in the language of a restrictive covenant. *Maddox, supra.* Furthermore, like the dwelling in *Slaby*, the short-term rentals in the case before us did not transform the character of the subdivision. Therefore, consistent with our duty to strictly construe the bill of assurance in favor of the unfettered use of property, we hold that the lack of a specific restriction against rentals of the property compels us to reverse and dismiss the circuit court's injunction.

Reversed and dismissed.